### TILTON *v.* BARRELL and another.

*(Circuit Court, D. Oregon.* June 26, 1883.)

1. RES JUDICATA.
    The decree of a competent court in a suit to enforce the right of the grantee against the grantors in an instrument admitted by both the plaintiff and defendants to have been intended to operate as a mortgage, determines the rights of the parties thereto and thereunder, so that either they or their privies, as against each other, are estopped to say or allege aught to the contrary.

2. FINAL DECREE—MODIFICATION OF.
    During the term the court may modify, supplement, or supersede a final decree in any case; and while it is more orderly and convenient to state in the second decree how far or in what respect it is intended to affect the first one, still this is not actually necessary; and it will be presumed that in giving the second decree the court intended to modify the first one, in so far as they differ, unless the circumstances plainly indicate the contrary.

3. DECREE AND EXECUTION THEREON.
    An execution directing the sale of mortgaged premises to satisfy the debt of the mortgagee must be based upon a decree which is sufficiently indicated therein; but, although there is a variance between the latter and the former as to the date of the decree, the execution and sale thereon is valid, in favor of any person claiming thereunder, if it plainly appears to the court, upon a view of all the facts, that the execution was in fact issued upon the decree in question, and for its enforcement.

4. TWO SIMILAR DECREES IN A CASE.
    Two decrees, purporting to be final, were given in *L.* v. *B.,* within three days of each other, directing the sale of mortgaged premises, and differing only in the mode of describing the same,—the first one describing them by parcels, and the second one by the same parcels, and as a whole. *Held,* that said decrees were, in legal effect and operation, identical, and an execution might properly issue upon either of them.

Action to Recover Possession of Real Property. Motion for a new trial.

*M. W. Fechheimer,* for plaintiff.

*W. W. Chapman,* for defendants.

Before FIELD and DEADY, JJ.

DEADY, J. On November 29, 1882, Charles E. Tilton, a citizen of New York, brought this action against Colburn Barrell and his wife

Aurelia Jane, citizens of Oregon, to recover the possession of a tract of land situated in Multnomah county, containing 13¼ acres, and alleged to be worth $13,000. Aurelia Jane demurred to the complaint, and on December 27, 1882, the demurrer was overruled. 14 FED. REP. 609. The defendants afterwards answered separately, and to the new matter contained in these answers the plaintiff replied.

From the pleadings it appears that the plaintiff purchased the premises from William S. Ladd, a citizen of Oregon, who purchased them at a sheriff's sale upon a decree against the defendants foreclosing a mortgage thereon, executed by them to said Ladd, and upon them the following issues arise:

(1) As to the ownership and right to the possession of the premises,—the plaintiff alleging that he is the owner of the same, and entitled to the possession thereof, while the defendants deny such ownership, and allege respectively that Aurelia Jane is the owner of 11 acres of the premises, and Colburn is the owner of the remaining 2⅜ acres, and entitled to the possession thereof. (2) As to legal effect of the conveyance of the premises to William S. Ladd by the defendants on January 17, 1877,—the defendants alleging that the same was intended as a mortgage to secure the payment of $3,850 then due from said Colburn to Ladd in two years, with interest at 1 per cent. per month, and that Ladd agreed to give the defendants a writing to that effect, which promise, so far as Aurelia Jane is concerned, he did not keep, but on March 22, 1877, executed a writing to said Colburn whereby he agreed to sell the whole of said premises to him; while the plaintiff alleges he gave said Colburn, for himself and as agent of his wife, on said date, a writing by which he agreed that if the sum due him was paid on or before March 7, 1878, but not afterwards, he would release and quitclaim the premises to said Colburn or his assigns. (3) As to whether the defendants are not estopped to allege any act concerning the execution of the conveyance of January 17, 1877, and the understanding or conduct of the parties about or concerning it,—the plaintiff alleging that on December 4, 1879, said Ladd brought a suit in the proper state circuit court, against the defendants, for the purpose of having said conveyance of January 17, 1877, declared a mortgage, and foreclosed accordingly; that the defendants were summoned, appeared and answered the complaint in said suit, and that on March 22, 1880, said court made a final decree therein, declaring said conveyance to be a mortgage; that the defendants had broken the condition thereof, and that the premises be sold as therein directed; that on March 23d an order of sale issued out of said court to the sheriff, requiring him to sell the premises as upon an execution, upon which the same were duly sold to William S. Ladd on April 24, 1880, who afterwards, on August 25, 1880, and after the confirmation of said sale by said court, duly conveyed the premises to the plaintiff. And (4) as to whether the conveyance by Ladd to the plaintiff was collusive or not,—the defendants alleging that it was made without consideration, and for the purpose of enabling said Ladd to maintain an action in this court for the possession of the property in the name of the plaintiff, and upon the understanding that the same, or the proceeds thereof, should be returned to him;—all of which the plaintiff denies.

The cause was tried by the district judge, with a jury, and the defendants admitting that the issue as to the collusive character of the conveyance to Ladd ought, upon the evidence, to be found against them, under the direction of the judge a verdict was found for the plaintiff. The defendants moved for a new trial, and the motion was

heard on June 26th. The grounds of the motion for a new trial are error of the court in the admission of the evidence and instruction to the jury.

In the course of the trial the plaintiff offered in evidence a transcript of the proceedings in the state court in the case of *Ladd* v. *Barrell et ux.*, to which the defendants objected for various reasons, only one of which is pressed on the motion for new trial. In this transcript there are two final decrees—the one given on March 19th and the other the 22d; and while the latter is pleaded in the replications as an estoppel, the execution appears to refer by date to the former. And, first, the rights of the parties to this conveyance or mortgage of January 17, 1877, and the writing of March 22, 1877, were directly involved and determined in the suit of *Ladd* v. *Barrell et ux.*, in the state court, and are now *res judicata*. The defendants had their day in that court, and by their answer substantially admitted the claim of the plaintiff therein, and cannot now be heard to allege aught to the contrary of the determination based thereon.

But counsel for the defendants contend that as there is nothing in the transcript from which it expressly appears that the state court intended to vacate or modify the first decree, the second one is a nullity, and does not support the estoppel set up in the replications; while, if such decree is valid, then the sale and conveyance to Ladd in pursuance of the first decree is void and of no effect.

But if the order of this argument is reversed, as it well may be, the conclusion reached supports the allegation of title or ownership in the plaintiff, and disproves the plea of title in the defendants, whatever may be the effect on the estoppel. Admit, if you please, that the second decree is void, as being made after the court had exhausted its power and jurisdiction over the subject, then the first decree is valid, and the sale and conveyance to Ladd in pursuance of it is valid. But we do not see any reason to think this second decree invalid. It was given at the same term as the first, and while the proceeding was still in the breast of the court, and subject, in this respect, to its control and power. True, it would have been more orderly and convenient, in making the second decree, to have referred to the first one, and stated in what particular the latter was intended to modify, supplement, or supersede the former. But such a statement was not absolutely necessary. On the contrary, it is to be presumed that a second decree made within the term is intended to modify a former one just so far as it differs from it, either in breadth or length. Any other conclusion, unless under circumstances plainly indicating mistake or misapprehension, would be contrary to reason and common sense. Nor is the objection that the sale appears to have been made on an execution issued on a decree of March 19th, instead of the 22d, valid in this action. The process upon which this sale was made consists of a copy of the decree, followed by a writ in the nature of a *venditione exponas*, issued and signed by the clerk,

and may be considered an execution, within the purview of section 403, Code Civil Proc., providing for the enforcement of a decree in a suit in equity.

It is necessary, of course, that this execution should have a decree to support it, and that it should appear from the former what decree is intended to be enforced by it. But where sufficient appears on the face of the execution to connect it with the decree,—to indicate with reasonable certainty that the one is intended to enforce the other, —courts usually disregard mere variances in the names of the parties, the date, or the amount of the judgment or the decree. *Bissell* v. *Kip*, 5 Johns. 100; *Jackson* v. *Walker*, 4 Wend. 462; *Jackson* v. *Anderson*, Id. 478; *Brown* v. *Betts*, 13 Wend. 33; Freeman, Ex. § 43.

The material question in this case is, did the execution issue on this decree? and if, upon all the facts, it appears evident to the court that it did, the sale upon it ought to be regarded, so far, as valid.

Now, there is no doubt that this execution was issued upon and to enforce the final decree in the court in *Ladd* v. *Barrell et ux.* The marks of identity are the names of the court and the parties, the origin and amount of the indebtedness to satisfy which the property was directed to be sold, the subject-matter of the sale,—in short, every material circumstance contained in such decree except the date, and that all the authorities agree is amendable, and should be disregarded in this action. But, in legal effect, there is no difference in these two decrees of March 19th and 22d, and the execution may have been well issued on either of them. The actual difference between them consists simply in the fact that in the first decree the premises are described by parcels, seven in number, and in the second decree by said parcels and as a whole,—the one being as exactly the equivalent of the other as 2 and 2 are of 4.

The entry of two final decrees in the case, and the difference between them, evidently arose in this way: At the request of counsel for the Barrells, the court sent the case to a referee to examine and report upon the propriety of a scheme of offering the property for sale in parcels, so as to enhance the proceeds thereof. The referee reported a scheme, dividing the property into seven parcels, and the court directed it to be sold accordingly, upon the condition that, after it had been offered in parcels, if any would bid more for it as a whole, it should be knocked down to him, and the result was that it was sold to Mr. Ladd as a whole. But in the first decree the property was only described and bounded by the metes and bounds of these seven parcels, and the second decree was evidently entered out of an abundance of caution, so as to describe the premises by metes and bounds as a whole, as well as in parcels, and as a convenience for future use and direction, in case it should be so offered and sold

The motion for a new trial is denied